UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number: 12-22184-CIV-MORENO

AMY HOWARD,

      Plaintiff,

vs.

KERZNER INTERNATIONAL LIMITED, a
Bahamian company; KERZNER
INTERNATIONAL BAHAMAS LIMITED, a
Bahamian company; ISLAND HOTEL
COMPANY LIMITED, a Bahamian company;
PARADISE ISLAND LIMITED, a Bahamian
company,

      Defendants.

_____/

## ORDER GRANTING MOTION TO DISMISS AS TO COUNTS III AND IV

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss Plaintiff's

Amended Complaint **(D.E. No. 54)**, filed on **January 6, 2014**. This is a case of alleged food

poisoning at a Bahamian owned and operated restaurant on Paradise Island, the Bahamas. Pursuant

to a conflicts of law analysis, this Court has determined that Bahamian law governs this dispute. The

Court does not dismiss Count II of the Complaint here because the record lacks sufficient evidence

of Bahamian law with respect to the strict liability claim. However, the Court dismisses both Counts

III and IV. The Florida Statutes cited by Plaintiff as providing a cause of action for Breach of

Express Warranty (Count III) and Breach of Implied Warranty (Count IV) cannot be applied

extraterritorially; moreover, Plaintiff has failed to allege any factual basis as to when or through what

means there was an express or an implied warranty made to Plaintiff regarding the preparation of the

fish she consumed or the absence of ciguatoxins therein. Even at the motion to dismiss stage, factual allegations in the pleadings must be sufficient to raise one's right to relief above the speculative level on the assumption that all of the complaint's allegations are true.

## I.    Factual Background

Plaintiff Amy Howard, a citizen of North Carolina, recently amended her Complaint against Defendants, Kerzner International Limited, Kerzner International Bahamas Limited, Island Hotel Company Limited, and Paradise Island Limited to add Count II for Strict Liability, Count III for Breach of Express Warranty, and Count IV for Breach of Implied Warranty. Defendants have moved to dismiss Counts II, III, and IV of the Amended Complaint

In her Complaint, Amy Howard alleges that she suffered personal injuries as a result of eating fish with ciguatoxins while at a restaurant called Mesa Grill during her stay at the Atlantis Resort on Paradise Island. Ciguatoxins are natural toxins found in tropical fish. These toxins do not harm fish or other wildlife in the food chain but cause symptoms similar to food poisoning in humans. The fish alleged to have caused Plaintiff Amy Howard's illness were purchased in the Bahamas and were prepared and served by Bahamian employees of Atlantis Resort at the Mesa Grill restaurant.

## II.    Legal Standard

In Florida, conflict-of-law issues in tort cases are resolved "according to the 'most significant relationship' test outlined in the Restatement (Second) of Conflicts of Laws." *Grupo Televisa, S.A. v. Telemundo Comm. Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) (citing *Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999 (Fla. 1980)). The Court need only make a

choice-of-law determination where a given case involves a "true conflict," which is present when "two or more states have a legitimate interest in a particular set of facts in litigation and the laws of those states differ or would produce a different result." A "false conflict" exists when "the laws of different states are (1) the same, (2) different but would produce the same outcome under the facts of the case, or (3) when the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by the application of its laws." *Id.*

Once the Court has identified a true conflict between two or more interested sovereigns, it proceeds with the second step of the choice-of-law analysis—applying the factors in the Restatement to identify which sovereign's interests are more significant. *See* Restatement (Second) of Conflict of Laws § 146 (1971). Unless another state has a more significant relationship, "the local law of the state where the injury occurred determines the rights and liabilities of the parties." *See id.* Generally, "the state whose [policy] interests are most deeply affected should have its local laws applied." *Id.* The Florida Supreme Court has specifically recognized that in personal injury cases, "[t]he state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law." *See Bishop,* 389 So. 2d at 1001.

To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.,* 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.,* 795 F.2d 948, 953 (11th Cir.1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Moreover, "[w]hile legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.

Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on

the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 545 (2007). In short, the complaint must not merely allege a misconduct, but demonstrate the

pleader is entitled to relief.


### III.   Choice of Law Analysis

This case is before the Court on diversity grounds pursuant to 28 U.S.C. § 1332; therefore,

Florida's substantive law, including its choice-of-law rules, applies. *Telemundo*, 485 F.3d at 1240;

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). In its choice-of-law analysis, as a preliminary matter,

the Court must characterize the legal issue here as based in tort law. This characterization

determines the choice-of-law rule that the forum state applies to the particular legal issue.

In tort cases, Florida applies the "most significant relationship" test delineated in § 145 of

the Restatement (Second) of Conflict of Laws. *Telemundo*, 485 F.3d at 1240 *(citing Bishop v. Fla.*

*Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla.1980)). The test involves consideration of several

factors to find the state with the most significant contacts in relation to the occurrence and to the

parties, with due regard for the policies underlying each of the competing state's pertinent laws.

*Nelson v. Freightliner, LLC*, 154 Fed. Appx. 98, 102–03 (11th Cir. 2005). Pursuant to the principles

of the "most significant relationship" test outlined in the Restatement, the first step of the Court's

choice-of-law analysis here is to determine which sovereigns have an interest in applying their laws

to this litigation. As the parties have set forth in the pleadings, both the Bahamas and the state of

Florida have interests in this litigation, and according to the pleadings, the facts of which the Court

must accept as true, the laws of the two sovereigns are in conflict regarding disposition of the case.

Because a true conflict exists, this Court conducts a two-pronged inquiry directed towards review of the factors listed in §§ 145 and 6 of the Restatement (Second) of Conflict of Laws. *Proprietors Ins. Co. v. Valsecchi*, 435 So. 2d 290, 294 (Fla. 3d DCA 1983). While § 145(1) sets out the basic principle for tort actions, § 145(2) lists the four factors that courts should consider in applying the choice-of-law principles of § 6. *Telemundo*, 485 F.3d at 1240. This Court considers: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and, (d) the place where the relationship, if any, between the parties is centered." Restat. 2d of Conflict of Laws, § 145(2); *Telemundo*, 485 F.3d at 1240. The Restatement advises that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." *Telemundo,* 485 F.3d at 1240 (citing Restat. 2d of Conflict of Laws, § 145).

These factors must be evaluated in light of the following policy considerations: "(a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and, (g) ease in the determination and application of the law to be applied." *Id.* at § 6(2); *Telemundo*, 485 F.3d at 1242–43. The analysis is done to determine which jurisdiction has the most "significant" contacts. *Id.* Both the Restatement and the courts have recognized that subsections (d) and (f) play little significance in the choice-of-law analysis in tort cases. *See, e.g., Medina v. Am. Airlines*, Case No. 02–22133, 2005 U.S. Dist. LEXIS 18916, at *21 (S.D. Fla. July 5, 2005) ("[T]he

-5-

Restatement generally gives little significance to factors (d) and (f) in tort cases.").

The Court first recognizes that Florida courts have formulated few hard-and-fast rules to guide the application of these principles. A survey of the Florida cases applying the "most significant relationship" test suggests that the law of the state in which the injury occurred will almost always govern the issue in dispute. *Bishop*, 389 So. 2d at 1001. For example, in *State Farm Mutual Automobile Insurance Co. v. Olsen*, 406 So. 2d 1109 (Fla.1981), the Florida Supreme Court held that in an action arising from a motor vehicle accident in Illinois, where the plaintiff was a Florida resident suing the defendant insurance company under a policy issued in Florida, the law of Illinois applied. But it is equally true that Florida courts do not apply the law of the state where the injury occurred if all parties and several significant events are connected with another state. For example, in *Bishop*, the court held that in a suit arising from an airplane crash in South Carolina, where all relevant parties were Florida residents and where the round trip flight began and was intended to conclude in Florida, the law of Florida applied. 389 So. 2d at 1001. But even that court noted the case's "special circumstances", explaining that "[t]he state where the injury occurred would usually ... be the decisive consideration in determining the applicable choice of law." *Id.*

Balancing these factors, the Court concludes that the law of the Bahamas will be applied here. Considering the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered, the Bahamas has the overriding interest in this litigation. The incident giving rise to Amy Howard's claims occurred in the Bahamas–Plaintiff claims she suffered personal injuries as a result of eating fish while dining at a restaurant there, and the conduct alleged to have caused the injury (the

selection of the fish, storage and preparation of the fish, cooking and service of the fish to plaintiff)

occurred in The Bahamas. Moreover, while the Plaintiff is a citizen and resident of North Carolina,

Defendants are all Bahamian corporations and maintain places of business in The Bahamas.  The

relationship between the parties is ultimately centered in The Bahamas; Plaintiff's claim arises

entirely from her stay at Defendants' resort in The Bahamas and all individuals involved in the

catching of the fish, storage of the fish, provision of the fish, purchase of the fish, cooking of the

fish or service of the fish are Bahamians. Florida's choice-of-law test as set forth in the Restatement

points strongly to application of Bahamian law.


**IV.    Count II: Strict Products Liability**

There is a dearth of caselaw in the Eleventh Circuit indicating the availability of a claim for

strict products liability under Bahamian law. That said, the case law that does speak to the issue

–and one New York case that addresses the question specifically–indicates that strict product

liability is not recognized as a cause of action under Bahamian law. *See Sadkin v. Avis Rent A Car*

*System, Inc.*, 224 A.D. 2d 303 (N.Y. App. Div. 1996); *Matthews v. Whitewater West Industries,*

*Ltd.*, 11-cv-24424-CMA, (S.D. Fla. 2011).

*In Sadkin v. Avis Rent A Car System, Inc.*, 224 A.D. 2d 303 (N.Y. App. Div. 1996), the New

York Court of Appeals analyzed Bahamian law and determined that Bahamian law does not

recognize the doctrine of strict products liability. The appellate court held: "causes of action for

strict products liability and breach of warranty [are dismissed] because Avis established that those

claims are not recognized under Bahamian law. *Id.* at 303-04 (citations omitted). Similarly, in

*Matthews v. Whitewater*, an affidavit of a Bahamian legal expert was filed outlining the issue of

Bahamian law and strict liability that explained how Bahamian law does not recognize strict products liability. *See* 11-24424-CIV, 2012 WL 6012894, at *2-3 (S.D. Fla. Dec. 3, 2012).

To be clear, Defendants have not provided evidence that definitively explains the relevant Bahamian law here. Defendants have failed to cite Bahamian case law or statutes so as to satisfactorily apprise the Court of what Bahamian law will apply. "A district court is not required to conduct its own research into the content of foreign law." *Mutual Services Insurance, Co. v. Frit Industries, Inc.*, 358 F.3d 1312, 1321 (11th Cir. 2004)). The burden is on Defendants as the moving party to establish the existence of a conflict here, and at this, the motion to dismiss stage, Defendants have established that a conflict of law exists regarding strict liability between the relevant sovereigns but have not demonstrated the specifics of the relevant Bahamian law. This Court awaits further briefing as to the issue of applicable law of The Bahamas at later stages in this proceeding.

## V.     Count III and Count IV: Breach of Express and Breach of Implied Warranty

Plaintiff cites Florida Statute § 672.313 as providing a cause of action for Breach of Express Warranty (Count III of Plaintiff's Amended Complaint) and Florida Statue § 672.318 as providing for a cause of action of Breach of Implied Warranty (Count IV of Plaintiff's Amended Complaint). However, Florida law cannot be applied extraterritorially unless the statute contains an "express intention that its provisions are to be given extraterritorial effect." *Burns v. Rozen*, 201 So.2d 629, 630 (Fla. 1st DCA 1967); *see also Southeastern Fisheries Ass'n, Inc. v. Dep't of Natural Res.*, 453 So.2d 1351, 1355 (Fla. 1984) (declining to extend law extraterritorially absent express intent of the legislature to do so). Neither of these particular statutes expresses the intent that these statutes apply

extraterritorially and such intent should not be inferred. *See United States v. Berdeal*, 595 F. Supp. 2d 1326, 1329-30 (S.D. Fla. 2009) ("The presumption that Florida fishing regulations do not apply to fish caught outside of Florida in the absence of clear legislative intent is consistent with other Florida cases refusing to imply the extraterritorial application of other Florida statutes") (*citing Burns*, 201 So.2d at 630–31 ("Extraterritorial effect of an enactment is not to be found by implication.")); *see also Southeastern Fisheries Assoc.*, 453 So. 2d at 1355 (refusing to imply extraterritorial application of statute prohibiting the use of fish traps); *Boehner v. McDermott*, 332 F.Supp.2d 149, 155 (D.D.C. 2004) ("Florida courts have consistently declined to apply Florida law outside territorial boundaries unless a statute contains an 'express intention that its provisions are to be given extraterritorial effect.'")).

Indeed, the general rule to be used in statutory construction is that, unless the intention to have a statute operate beyond the territorial limits of its enacting state is clearly expressed or indicated by its language or purpose, no legislation is presumed to be intended to operate with extraterritorial effect, but to apply only within the territorial jurisdiction of the state or country enacting it, and it is generally so construed. *See Burns*, 201 So. 2d at 630–31. Accordingly, a statute is *prima facie* operative only as to persons or things within the territorial jurisdiction of the lawmaking power which enacted it. *Id.* This Court will not here contravene the requirement of clearly expressed legislative intent to apply Florida statutes extraterritorially. So in the absence of an applicable statute upon which to base Counts III and IV, those counts fail as a matter of law.

Also supporting dismissal of these two counts is Plaintiff's lack of factual support for her claims in Count III and Count IV. She merely alleges in both that Defendants "warranted to the public and to the Plaintiff that the subject fish was not adulterated, impure, poisonous, harmful,

deadly, and/or not fit for human consumption." Under the Federal Rules a Complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 553. Here however, Plaintiff fails to identify where, when, or how Defendants made any express warranty or what conversation or documents might contain the express warranty. Similarly, she provides no evidence for an implied warranty. Although courts must construe and accept as true the factual allegations in a complaint and reasonably deductible inferences therefrom, "courts need not accept internally inconsistent factual claims, conclusory allegations, unwarranted deductions, or mere legal conclusions made by a party." *Response Oncology, Inc. v. Metrahealth Insurance Co.*, 978 F. Supp. 1052, 1058 (S.D. Fla. 1997) (emphasis added); *see also Davidson v. Georgia*, 622 F.2d 895 (11th Cir. 1980). "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (emphasis added); *see also Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true ...."); *Davidson v. Georgia*, 622 F.2d 895, 897 (11th Cir. 1980) ("When the allegations contained in a complaint are wholly conclusory [ ] and fail to set forth facts which, if proved, would warrant the relief sought, it is proper to dismiss for failure to state a claim"). For these reasons, the Court grants the Defendants' Motion to Dismiss as to Counts III and IV of the Amended Complaint.

## VI.    Conclusion

For the reasons set forth it is ADJUDGED that this Court GRANTS Defendants' Motion to Dismiss as to Counts III and IV with prejudice. The two Florida Statutes Plaintiff relies on to support her express and implied warranty claims cannot be applied extraterritorially, and the Plaintiff failed to cite any evidence of the claimed express or implied warranty. Count II remains, as Defendants did not meet their burden at this time in demonstrating that Bahamian law fails to provide for strict liability in personal injury suits. Defendants must answer the remaining Counts of the Complaint by March 14, 2014.

DONE AND ORDERED in Chambers at Miami, Florida, this 21 day of February, 2014.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record

-11-